IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| KIMBERLY RENEE STURGIS | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| KILOLO KIJAKAZI, Acting | : | NO. 22-417 |
| Commissioner of Social Security[1] | : | |

## MEMORANDUM AND ORDER

ELIZABETH T. HEY, U.S.M.J.                                         March  30 , 2023

Kimberly Renee Sturgis ("Plaintiff") seeks review of the Commissioner's decision denying her application for disability insurance benefits ("DIB"). For the reasons that follow, I conclude that the decision of the Administrative Law Judge ("ALJ") is supported by substantial evidence.

## I.   PROCEDURAL HISTORY

Plaintiff protectively filed for DIB on June 25, 2019, alleging that her disability began on October 15, 2018, as a result of osteoarthritis of the back. Tr. at 109, 125, 204-07, 223.[2] Plaintiff's application was denied initially and on reconsideration, id. at 129-

---

[1] In her Complaint, Plaintiff names "Commissioner of Social Security" as the defendant in the case. Doc. 1, Caption. Kilolo Kijakazi is currently the Acting Commissioner of Social Security, see https://www.ssa.gov/agency/commissioner/ (last visited Jan. 3, 2023). Therefore, I have amended the caption to identify the Acting Commissioner by name.

[2] To be entitled to DIB, Plaintiff must establish that she became disabled on or before her date last insured ("DLI"). 20 C.F.R. § 404.131(b). The Certified Earnings Record indicates and the ALJ found that Plaintiff was insured through March 31, 2020. Tr. at 31, 33, 217. The Commissioner agrees that this is the correct DLI. Doc. 12 at 8. I note that the Disability Determination Explanations at the Initial and Reconsideration levels mistakenly indicate that Plaintiff's DLI is December 31, 2019. Id. at 98, 110.

32, 134-37, and Plaintiff requested a hearing before an ALJ. Id. at 138-39. After holding a hearing on November 20, 2020, id. at 45-97, the ALJ found on April 22, 2021, that Plaintiff was not disabled. Id. at 30-39. The Appeals Council denied Plaintiff's request for review on November 30, 2021, id. at 1-3, making the ALJ's April 22, 2021 decision the final decision of the Commissioner. 20 C.F.R. § 404.981.

Plaintiff commenced this action in federal court on February 1, 2022, Doc. 2, and the matter is now fully briefed and ripe for review. Docs. 11-13.[3]

## II. **LEGAL STANDARDS**

To prove disability, a claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for . . . not less than twelve months." 42 U.S.C. § 423(d)(1). The Commissioner employs a five-step process, evaluating:

> 1. Whether the claimant is currently engaged in substantial gainful activity;
>
> 2. If not, whether the claimant has a "severe impairment" that significantly limits her physical or mental ability to perform basic work activities;
>
> 3. If so, whether based on the medical evidence, the impairment meets or equals the criteria of an impairment listed in the listing of impairments ("Listings"), 20 C.F.R. pt. 404, subpt. P, app. 1, which results in a presumption of disability;

---

[3]The parties consented to magistrate judge jurisdiction pursuant to 28 U.S.C. § 636(c). See Standing Order, In Re: Direct Assignment of Social Security Appeals to Magistrate Judges – Extension of Pilot Program (E.D. Pa. Nov. 27, 2020) (appendix dated June 21, 2018); Doc. 7.

> 4. If the impairment does not meet or equal the criteria for a listed impairment, whether, despite the severe impairment, the claimant has the residual functional capacity ("RFC") to perform her past work; and
>
> 5. If the claimant cannot perform her past work, then the final step is to determine whether there is other work in the national economy that the claimant can perform.

See Zirnsak v. Colvin, 777 F.3d 607, 610 (3d Cir. 2014); see also 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).  The claimant bears the burden of proof at steps one through four, while the burden shifts to the Commissioner at the fifth step to establish that the claimant is capable of performing other jobs in the local and national economies, in light of her age, education, work experience, and RFC.  See Poulos v. Comm'r of Soc. Sec., 474 F.3d 88, 92 (3d Cir. 2007).

The court's role on judicial review is to determine whether the Commissioner's decision is supported by substantial evidence.  42 U.S.C. § 405(g); Schaudeck v. Comm'r of Soc. Sec., 181 F.3d 429, 431 (3d Cir. 1999).  Therefore, the issue in this case is whether there is substantial evidence to support the Commissioner's conclusion that Plaintiff is not disabled.  Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," and must be "more than a mere scintilla."  Zirnsak, 777 F.2d at 610 (quoting Rutherford v. Barnhart, 399 F.3d 546, 552 (3d Cir. 2005)); see also Biestek v. Berryhill, __ U.S. __, 139 S. Ct. 1148, 1154 (2019) (substantial evidence "means only – 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion'") (quoting Consol. Edison Co. v. NLRB, 305

U.S. 197, 229 (1938)). The court has plenary review of legal issues. Schaudeck, 181 F.3d at 431.

## III.   DISCUSSION

### A.   ALJ's Findings and Plaintiff's Claims

The ALJ found that Plaintiff suffered from the severe impairments of disorders of the lumbar spine, asthma, hypertension, and an abscess/fistula. Tr. at 33. In addition, the ALJ found that Plaintiff's hemorrhoids and a right foot/lower extremity disorder were non-severe. Id. The ALJ determined that Plaintiff did not have an impairment or combination of impairments that met the Listings, id., and that she retained the RFC to perform light work with limitations to standing and/or walking for a total of 4 hours in an 8-hour workday; occasionally balancing, stooping, kneeling, crouching, crawling, and climbing ramps and stairs; never climbing ladders, ropes or scaffolds; and avoiding frequent exposure to extreme cold, fumes, odors, dust, gases, poor ventilation, and hazards, including moving machinery and unprotected heights. Id. at 34. Based on the testimony of a vocational expert ("VE"), the ALJ found that Plaintiff could not perform her past relevant work as a nurse assistant, receptionist/mail clerk, but could perform other work in the national economy, including small parts assembler, sub assembler, and production assembler. Id. at 37-39. Therefore, the ALJ found that Plaintiff was not disabled through March 31, 2020, her DLI. Id. at 39.

Plaintiff claims that the ALJ erred by failing to properly assess the opinion evidence as required by the governing regulations. Doc. 11. Defendant responds that substantial evidence supports the ALJ's opinion evaluation. Doc. 12. In reply, Plaintiff

argues that Defendant has misapplied governing regulations and reasserts that the ALJ failed to properly consider and explain her consideration of the opinion evidence. Doc. 13.

### B.     Plaintiff's Claimed Limitations and Testimony at the Hearing

Plaintiff was born on August 30, 1968, making her 50 years of age at the time of her alleged onset date (October 15, 2018), and 51 years of age when her insured status expired (March 31, 2020). Tr. at 54, 204. She completed eleventh grade and then obtained her general equivalency diploma. Id. at 56.[4] She has past relevant work as a receptionist/mail clerk in a nursing home, and a certified nursing assistant working in people's homes. Id. at 60-63, 224.

Plaintiff was involved in a bus accident in June of 2018, and stopped working due to back spasms after the accident. Tr. at 64. At the hearing, Plaintiff explained that in addition to back spasms, she also suffers from abscesses or boils between her buttocks, which make it difficult for her to sit for long periods of time. Id. at 67, 71-72. Plaintiff testified that she can sit for only 30 minutes at a time due to the abscesses, and stand for 7 minutes due to back spasms. Id. at 73.[5] She can also walk for about a block and a half before needing to stop and rest. Id. at 74. Plaintiff has used a back brace since 2000, and was prescribed "a good one" in 2018. Id. at 86. She has used a cane for walking since

---

[4]Plaintiff reported in her Disability Report that she completed one year of college. Tr. at 224.

[5]Originally Plaintiff said she could stand for 15 minutes, but then clarified that she can only stand for 7 minutes. Tr. at 73-74.

2018, but it was not prescribed. Id. at 85. Plaintiff also said that she lies down 6 times a day for 35 minutes each time. Id. at 77.[6] In addition, bending over causes cramps in her back. Id. at 78. When she lifts or carries anything, later in the day or the next day, she finds that she is not able to move at all due to back spasms. Id. Plaintiff testified that she takes pain medication as needed, which is not every day. Id. at 86.

According to Plaintiff, she gets up early in the morning so her husband can help her get in the tub and get washed and dressed before he leaves for work. Tr. at 77, 79. Plaintiff explained that she has difficulty stretching her arms up to put on shirts and bending over to put on socks and shoes. Id. at 80. The pain in her back interferes with her sleep so that she sleeps only three hours a night. Id. at 84. Plaintiff also testified that her asthma continues to cause her problems and that she uses inhalers at night. Id. at 87-88.

The VE classified Plaintiff's work as a certified nursing assistant as a medium job, but as Plaintiff performed it, the job was very heavy, and the receptionist/mail clerk was a light job, but heavy as Plaintiff performed it. Tr. at 90-91. The ALJ asked the VE to consider someone of Plaintiff's age, education, and work experience, who could perform light work, limited to standing and/or walking for 4 hours total in an 8-hour workday, who could occasionally balance, stoop, kneel, crouch, crawl, and climb ramps and stairs; never climb ladders, ropes, or scaffolds; and must avoid frequent exposure to extreme cold, fumes, odors, dust, gases, poor ventilation, and hazards including moving

---

[6]Originally Plaintiff testified that she lies down every hour. Tr. at 75.

machinery and unprotected heights. Id. at 91-92. The VE testified that such a person could not perform work as a nurse assistant, but could perform the receptionist/mail clerk job as classified, but not as Plaintiff performed it. Id. at 92. The ALJ asked the VE to identify unskilled occupations meeting the limitations she had previously identified. Id. The VE identified small products assembler, sub assembler, and production assembler. Id. at 92-93.[7]

### C. Summary of the Medical Record

Plaintiff was a passenger on a bus that was involved in an accident on June 29, 2018. Tr. at 381. She saw her primary care group, Project Home, on July 9, 2018, complaining of back spasms and pain in her right hip to the ankle. Id. On examination, she had a reduced range of motion in forward flexion, mild pain on spinal extension, and pain with lateral flexion in the lumbar region radiating into the leg and heal, with a positive straight-leg raising test.[8] Id. at 383. Nyasha George, M.D., prescribed

---

[7]The VE noted that a sit/stand option would reduce the numbers of all three of these occupations by 50%. Tr. at 92-93.

[8]The straight leg-raising test checks for impingement of the nerves in the lower back by determining whether there is pain when "the symptomatic leg is lifted with the knee fully extended; pain in the lower extremity between 30 and 90 degrees of elevation indicates lumbar radiculopathy, with the distribution of the pain indicating the nerve root is involved." Dorland's Illustrated Medical Dictionary, 32nd ed (2012) ("DIMD"), at 1900.

cyclobenzaprine and over-the-counter pain relievers (ibuprofen and naproxen).[9]  Id. at 383-84.

Plaintiff began physical therapy at Health Bridge Management on July 6, 2018, at which time David Craven, D.C., noted tenderness and hypertonicity in Plaintiff's lumbar spine, right greater than left, reduced range of motion of the lumbar spine,[10] and a positive straight-leg raising test.  Tr. at 398.  Plaintiff began receiving chiropractic treatment three times a week, then reduced to six treatments in August, four in September, and one each in October and November 2018.  Id. at 398-411.  Throughout this period, the treatment providers noted that Plaintiff's symptoms were exacerbated by walking, housework, standing, and working.  See, e.g., id. at 398 (7/10/18 – noting exacerbation with walking, housework), 406 (8/28/18 – same), 408 (9/25/18 – walking, housework, standing), 410 (11/2/18 – walking, housework, standing, working).[11]  On November 2, 2018, Dr. Craven noted that Plaintiff's lumbar range of motion was only "mildly restricted" in the areas of limitation noted on July 6.

---

[9]Cyclobenzaprine (brand Flexeril) is a muscle relaxant used together with rest and physical therapy to treat skeletal muscle conditions such as pain or injury.  See https://www.drugs.com/cyclobenzaprine.html (last visited Mar. 10, 2023).

[10]"Flexion – 30 degrees (norm 60).  Extension – 5 degrees (norm 25).  L. Lat Flex – 10 degrees (norm 25).  R. Lat Flex – 10 degrees (norm 25). L Rotation – 10 degrees (norm 30).  R. Rotation – 10 degrees (norm 30)."  Tr. at 398.
The Health Bridge treatment notes appear a second time in the record at pages 541-87.

[11]At the administrative hearing, Plaintiff testified that she worked as a server for a catering company part-time after her alleged onset date.  Tr. at 56-57.  The ALJ did not consider this substantial gainful activity.  Id. at 33, 90.

On July 20, 2018, Dr. George discontinued Flexeril and started Plaintiff on diclofenac and lidocaine ointment,[12] and suggested acupuncture and chair massage. Tr. at 375-76. A lumbar MRI performed on August 8, 2018, was normal, with no evidence of herniation or stenosis. Id. at 419. On October 24, 2018, on referral from Dr. Craven, Harris Ross, D.O., noted Plaintiff's complaints of pain in her lower back in the gluteal area, radiating down her right leg. Id. at 386-88, 413. On examination, Dr. Ross noted that Plaintiff's lumbar spine "had marked spasm with a painful trigger point over L5," and pain over the right piriformis muscle, with limited range of motion with a forward bend. Id. at 387, 414. The doctor diagnosed Plaintiff with sprain and strain of the lumbar spine with nerve root irritation and radicular components into the right leg, and piriformis muscle syndrome. Id. The doctor performed a trigger point injection on the right at L5. Id. The doctor also performed acupuncture and electrical stimulation. Id. On November 6, 2018, Amelia Tabuena, M.D., performed an EMG and nerve conduction study indicating mild L4 radiculopathy on the right. Id. at 420.[13]

---

[12]Diclofenac is a nonsteroidal anti-inflammatory drug used to trat mild to moderate pain by reducing substances in the body that cause inflammation. See https://www.drugs.com/diclofenac.html (last visited Mar. 10, 2023).

[13]In addition, Plaintiff was treated for a leg injury in September 2018. Tr. at 361. Although the hospital records for the visit are not in the record, Plaintiff followed up with Project Home on September 28, 2018, seeking different medications because she could not afford the medicine prescribed at the hospital. Id. Dr. George found no need for medication because ten days had elapsed and the wound was healing well. Id. at 367.

Plaintiff also has a recurring problem of perirectal abscesses and an anal fistula.[14] See tr. at 315 (10/5/18 – Roxborough Emergency Department treatment note referring to similar symptoms three years prior). On October 5, 2018, Plaintiff was admitted to Roxborough Hospital with an abscess on her right buttock. Id. at 315-21. Catherine Cahill, D.O., performed an incision and drainage procedure on a large perirectal abscess. Id. at 326-27. Plaintiff was diagnosed with sepsis secondary to recurrent right perirectal abscess, id. at 331, and was released on October 7, 2018, with Bactrim[15] and instructions to follow up with the wound care clinic. Id. at 334-35.

Plaintiff again had a perianal abscess/fistula drained on December 3, 2019, by Richard Greenberg, M.D., at Einstein Hospital. See tr. at 526 (12/12/19 treatment note from Project Home follow up after surgery).[16] On April 22, 2020, Dr. Greenberg noted that the drain remained in place and no intervention was necessary. Id. at 661. Dr. Greenberg removed the drain on June 24, 2020, noting that Plaintiff was healing very

---

[14] An anal abscess is an infected cavity filled with pus found near the anus or rectum. . . .
An anal fistula . . . is frequently the result of a previous or current anal abscess. . . . A fistula is an epithelialized tunnel that connects a clogged gland inside the anal canal to the outside skin. . . .
See https://fascrs.org/patients/diseases-and-conditions/a-z/abscess-and-fistula-expanded-information (last visited Mar. 10, 2023).

[15] Bactrim is an antibiotic. See https://www.drugs.com/bactrim.html (last visited Mar. 14, 2023).

[16] The treatment notes for this procedure are not in the administrative record.

well with no signs of infection. Id. at 662-63. On July 30, 2020, Dr. Greenberg noted that Plaintiff was doing well after the drain was removed. Id. at 665.

On November 27, 2019, Saeed Bazel, M.D., conducted an internal medicine examination, noting that Plaintiff's gait was normal, and she could walk on heels and toes without difficulty. Tr. at 443. Her ability to squat was limited to 40% due to back pain. Id. The doctor noted that Plaintiff's shoulder, knee, thigh, and lower leg movements were mildly limited due to lower back pain. Id. at 444. Dr. Bazel also noted that Plaintiff had a positive straight-leg raising test. Id. He opined that Plaintiff could frequently lift up to 20 pounds, and occasionally carry up to 10 pounds. Id. at 446. He also found that Plaintiff could sit for an hour at a time for a total of 6 hours in the workday; stand for 20 minutes at a time for a total of 2 hours; and walk for 15 minutes at a time for a total of 2 hours. Id. at 447. With respect to postural activities, the doctor found that Plaintiff should never climb ladders or scaffolds, but could occasionally perform all other postural activities. Id. at 449. The doctor noted limited range of motion in the shoulders, knees, hips, and the lumbar spine. Id. at 452-53.

On September 15, 2020, Maureen Duffy, R.N., completed a Treating Source Statement, indicating that Plaintiff could frequently lift less than 10 pounds, occasionally lift 10 pounds, and frequently carry ten pounds or less. Tr. at 630. Ms. Duffy also found that Plaintiff could sit for 5 hours and stand/walk for 3 hours in a workday. Id.[17]

---

[17]Ms. Duffy's report is dated September 15, 2020, and indicates that she had treated Plaintiff for about six months. Tr. at 629. Thus, it is not clear that Ms. Duffy cared for Plaintiff during the relevant period.

On February 14, 2020, L. Antone Raymundo, M.D., found from his review of the record that Plaintiff was capable of occasionally lifting/carrying 20 pounds and frequently lifting/carrying 10 pounds, with an ability to stand/walk 6 hours a day and sit 6 hours in a workday. Tr. at 103. On August 4, 2020, on reconsideration, Toni Jo Parmelee, D.O., reached the same conclusions with the exception that Plaintiff could stand/walk for 4 hours a day. Id. at 118.

### D. Plaintiff's Claim

Plaintiff argues that the ALJ's RFC determination is unsupported by substantial evidence because she failed to adequately assess the opinion evidence in accordance with the governing regulations. Doc. 11 at 3-9; Doc. 13 at 1-3. Defendant responds that substantial evidence supports the ALJ's evaluation of the opinion evidence. Doc. 12 at 10-16.

The regulations governing the consideration of opinion evidence, which apply to Plaintiff's claim because it was filed after March 27, 2017, focus on the persuasiveness of each medical opinion.

> We will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from your medical sources.

20 C.F.R. § 404.1520c(a).[18] The regulations list the factors to be utilized in considering medical opinions: supportability, consistency, treatment relationship including the length and purpose of the treatment and frequency of examinations, specialization, and other factors including familiarity with other evidence in the record or an understanding of the disability program. Id. § 404.1520c(c). The most important of these factors are supportability and consistency, and the regulations require the ALJ to explain these factors, but do not require discussion of the others. Id. § 404.1520c(b)(2). The regulations explain that "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) . . . , the more persuasive the medical opinions . . . will be." Id. § 404.1520c(c)(1). In addition, "[t]he more consistent a medical opinion(s) . . . is with the evidence from other medical sources and nonmedical sources . . . , the more persuasive the medical opinion(s) . . . will be." Id. § 404.1520c(c)(2).

"The ALJ must consider all the evidence and give some reason for discounting the evidence she rejects." Plummer v. Apfel, 186 F.3d 422, 429 (3d Cir. 1999) (citing Stewart v. Sec'y HEW, 714 F.2d 287, 290 (3d Cir. 1983)). When there is a conflict in the evidence, the ALJ may choose which evidence to credit and which evidence not to credit, so long as she does not "reject evidence for no reason or for the wrong reason."

---

[18] In contrast, the regulations governing prior applications spoke in terms of the weight to be given each opinion, including controlling weight for the opinions of certain treating sources. 20 C.F.R. § 404.1527.

Rutherford v. Barnhart, 399 F.3d 546, 554 (3d Cir. 2005); see also Plummer, 186 F.3d at 429 (quoting Mason v. Shalala, 994 F.2d 1058, 1066 (3d Cir. 1993)).

      1.  Dr. Bazel

Here, Plaintiff complains that the ALJ improperly considered the opinion of consultative examiner Dr. Bazel. The ALJ found Dr. Bazel's opinion unpersuasive.

> Dr. Bazel, an examining source, assessed a capacity for frequent lifting of up to 20 pounds, occasional carrying of up to 10 pounds, two hours of standing in an eight-hour workday, and two hours of walking in an eight-hour workday ([tr. at 446-47]). This opinion is unpersuasive because his examination findings do not support the limitation in standing and walking. Additionally, [Plaintiff's] spinal disorder imposed a greater limitation in lifting[.]

Tr. at 37. In contrast, the ALJ found Plaintiff could perform light work,[19] and could stand and/or walk for a total of 4 hours. Id. at 34.

With respect to supportability, Plaintiff argues that Dr. Bazel's examination findings support his opinion and that the ALJ acknowledged Dr. Bazel's positive findings earlier in her decision:

> Elsewhere in the ALJ's decision, the only mention of positive findings from Dr. Bazel's report stated: "A straight leg raise was positive bilaterally at 40º, inducing low back pain radiating to the knees bilaterally, in supine and seated positions. Shoulder movements were mildly limited due to the production of low back pain. Her squat was limited to 40% of full but she was able to rise f[ro]m a chair without difficulty (Exhibit 6F [specifically, tr. at 443-44])." [Id. at]

---

[19]"Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls." 20 C.F.R. § 404.1567(b).

14

> 33. Perhaps if the ALJ had juxtaposed the findings of Dr.
> Bazel's exam with her conclusion at [page] 37, the ALJ
> would have noticed that Plaintiff clearly exhibited not only
> the knee and shoulder issues discussed at [page] 33, but also
> comorbid issues in movement of the hips, and lumbar spine.
> ([Id. at] 452-53)

Doc. 11 at 5-6. Plaintiff's argument overlooks Dr. Bazel's other findings during the examination which were inconsistent with his RFC assessment, namely that Plaintiff "had a normal gait and was able to walk on her heels and toes without difficulty. Her stance was normal and she brought no assistive device to the examination." Tr. at 33 (citing id. at 443). Thus, the ALJ identified Dr. Bazel's examination findings supporting her RFC assessment.[20]

With respect to consistency, the ALJ also discussed the fact that Plaintiff's treatment and activities were inconsistent with disabling limitations. "The course of [Plaintiff's] medical treatment prior to the DLI was routine and conservative except for her fistula repair. She has not had the aggressive treatment one would expect a disabled individual to have had." Tr. at 36. This finding is supported by substantial evidence. A lumbar MRI performed on August 8, 2018, was normal, with no evidence of herniation or

---

[20]Shortly after the consultative exam with Dr. Bazel, Dr. Greenberg drained Plaintiff's anal fistula and inserted a drainage seton. See tr. at 526. To the extent Plaintiff testified to limitations in sitting and walking due to recurrence of the abscess/fistula, see id. at 72, the ALJ noted that Dr. Greenberg's treatment records show that Plaintiff's "post-surgery journey had been uneventful." Id. at 36 (citing id. at 661-69).
In addition, the ALJ also limited Plaintiff's postural activities (stooping, kneeling, crouching, and crawling) accounting for Plaintiff's back pain and limited range of movement. Tr. at 34.

15

stenosis. Id. at 419. An EMG/nerve conduction study performed on November 6, 2018, indicated mild L4 radiculopathy on the right. Id. at 420. Dr. Ross performed a trigger point injection on the right at L5, and acupuncture. Id. at 387, 414. Plaintiff testified that she did not take pain medication daily. Id. at 86.[21]

Additionally, the ALJ noted that Plaintiff testified that she sometimes accompanies her husband grocery shopping, "which requires standing and walking inside of a store and would appear inconsistent with the alleged pain-induced difficulty with standing and walking. She also presumably rides in a vehicle with her husband in order to get to the store, which would appear inconsistent with the alleged pain by sitting." Tr. at 36; see also id. at 83-84. Considering the record as a whole, I conclude that the ALJ's consideration of Dr. Bazel's assessment is supported by substantial evidence.

 2. Dr. Parmelee

Plaintiff also claims that the ALJ failed to adequately explain her finding that Dr. Parmelee's opinion was persuasive. Doc. 11 at 6. Defendant responds that, "[r]eading

---

[21]At the end of her brief, Plaintiff provides a synopsis of her medical treatment including treatment prior to and after her DLI and argues that this evidence warrants consideration and is consistent with Dr. Bazel's opinion. Doc. 11 at 7-8. The court, which does not assess the record de novo, must recognize that an ALJ is not required to provide a "written evaluation of every piece of evidence," provided she "articulates at some minimum level her analysis of a particular line of evidence." Edinger v. Saul, 432 F. Supp.3d 516, 529 (E.D. Pa. 2020) (quoting Phillips v. Barnhart, 91 F. App'x 775, 780 n.7 (3d Cir. 2004)). Here, the ALJ has provided sufficient explanation for her conclusions. For example, Plaintiff cites to the incision and drainage of an anal abscess she underwent prior to her alleged onset date. Doc. 11 at 7. The ALJ addressed the limitations caused by Plaintiff's abscess/fistula noting that Dr. Greenberg's treatment notes indicate that Plaintiff had no complaints after her surgery in December 1999. Tr. at 36 (citing id at 661-69).

the decision as a whole, the ALJ outlined the evidence she relied on when evaluating Dr. Parmelee's findings and formulating the RFC." Doc. 12 at 13-14.

As previously noted, Dr. Parmelee, who conducted a records review at the reconsideration level, concluded that Plaintiff could occasionally lift/carry 20 pounds, frequently lift/carry 10 pounds, stand/walk for 4 hours, and sit for 6 hours in a workday. Tr. at 118. In addressing Dr. Parmelee's opinion, the ALJ stated, "[t]his is persuasive but other evidence supports greater limitations regarding [Plaintiff's] tolerance of exposure to hazards[.]" Id. at 37.[22] Plaintiff argues that "[t]he ALJ put forth no effort to express consistent or inconsistent evidence, nor did the ALJ even mention what, if any, supporting analysis Dr. Parmelee provided." Doc. 11 at 6.

The ALJ's assessment of the opinion evidence, including Dr. Parmelee's assessment, followed a discussion of the medical record and Plaintiff's testimony. As previously noted, the ALJ concluded that Plaintiff's treatment prior to her DLI was inconsistent with disabling limitations. See supra at 15. This conclusion was supported by a normal MRI and an EMG evidencing mild radiculopathy. See tr. at 419, 420. The ALJ discussed Dr. Bazel's examination findings, including Plaintiff's normal gait, ability to walk on her heels and toes without difficulty, and normal stance. Id. at 33, 36. The ALJ also noted that Plaintiff takes pain medication only as needed and not on a daily basis. Id. at 35. Read as a whole, see Jones v. Barnhart, 364 F.3d 501, 505 (3d Cir.

---

[22]Dr. Parmelee found that Plaintiff should avoid concentrated exposure to hazards. Tr. at 119.

2004) (requiring review of the ALJ's decision as a whole), the ALJ's consideration of Dr. Parmelee's assessment is supported by substantial evidence.

Plaintiff next complains that the ALJ failed to acknowledge an alleged inconsistency in Dr. Parmelee's assessment. Specifically, Dr. Parmelee stated that Plaintiff's conditions had become more severe, tr. at 121, although Dr. Parmelee's analysis was nearly identical to that of Dr. Raymundo who conducted the record review at the initial stage. Doc. 11 at 6. Defendant responds that there was no error in the ALJ's analysis of Dr. Parmelee's opinion. Doc. 12 at 14.

Plaintiff's argument focuses on the RFC provided by each of the doctors who reviewed records during the administrative proceedings. Dr. Parmelee's assessment is slightly more limiting than Dr. Raymundo's. Specifically, Dr. Raymundo opined that Plaintiff could stand/walk for 6 hours in an 8-hour workday, tr. at 103, while Dr. Parmelee opined that Plaintiff could stand/walk for only 4 hours in an 8-hour workday. id. at 118, and Dr. Parmelee imposed a limit on concentrated exposure to hazards whereas Dr. Raymundo did not. Id. at 104, 119. Each doctor was asked to "[e]xplain exertional limitations and how and why the evidence supports your conclusions. Cite specific facts upon which your conclusions are based." Id. at 103, 118. Despite the difference in the limitation on standing/walking, both doctors stated that their findings with respect to exertional limitations were based upon:

> ROM limited in shoulders, spine, hips, knees.
> *SLR positive bilaterally at 40 degrees.

> Normal gain.  Squat 40% No AD.  Some exercises aggravated her back pain.

Id.

Plaintiff complains that "[a] change in condition warranting a change in limitations necessarily warrants an explanation.  The provision of two opinions with the same supporting analysis suggests an element of arbitrariness contrary to the process due claimants."  Doc. 11 at 6.  Thus, Plaintiff claims Dr. Parmelee's opinion fails the supportability analysis.  I disagree.

Chronologically, Dr. Raymundo's consideration of the evidence ended with Dr. Bazel's consultative examination on November 27, 2019.  See tr. at 106.  Dr. Parmelee reviewed records post-dating Dr. Bazel's examination, including Plaintiff's December 3, 2019 surgery and a subsequent visit with her primary care provider.  Id. at 121.  Dr. Parmelee acknowledged Dr. Raymundo's assessment, as well.

> The prior administrative medical findings from the initial level are evaluated and found supportable and consistent based on the longitudinal medical evidence, opinions given by the claimant's own medical sources, and statements made by the claimant.
>
> Medical evidence not available at the time of the first determination is evaluated and incorporated into the present determination of limitations.  This previously unavailable medical evidence may account for any changes in this evaluation.

Id.  Although the explanation provided in RFC portion of Dr. Parmelee's report was identical to that provided in the same section of Dr. Raymundo's report, Dr. Parmelee's analysis of the evidence differed from Dr. Raymundo's and included analysis of

additional evidence in a section of the report entitled Reconsideration Analysis, including Plaintiff's surgery on December 3, 2019, a December 12, 2019 treatment note from Patrick Doggett, M.D., at Project Home, and review of Plaintiff's Function Report and a Third Party Function Report submitted by Plaintiff's neighbor.  Id. at 121; see also id. at 522-29 (12/12/19 Project Home Treatment Note), 232-39 (Plaintiff's Function Report), 251-59 (Third Party Function Report).  Thus, reviewing Dr. Parmelee's entire assessment, Plaintiff's claim of arbitrariness fails.  Dr. Parmelee adequately explained the basis for his assessment.  Thus, I find no error in the ALJ's consideration of Dr. Parmelee's assessment.

## IV.   CONCLUSION

The ALJ properly considered the opinion evidence and her analysis is supported by substantial evidence.

An appropriate Order follows.